## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

**ANTHON MINOR, LTD.,**

   *Plaintiff,*

**v.**                                        **Case No.  SA-21-CV-01180-JKP**

**STATE AUTOMOBILE MUTUAL IN-**
**SURANCE COMPANY,**

   *Defendant.*

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the Court is Defendant State Automobile Mutual Insurance Company's (State Auto) Motion for Summary Judgment. *ECF Nos. 24,28,32*. Plaintiff Anthon Minor, Ltd. (Minor Ltd.) responded. *ECF Nos. 26,31*. Upon consideration, the Court concludes the Motion shall be DENIED.

### Undisputed Factual Background

State Auto issued to Minor Ltd. an insurance policy (the "Policy") on commercial property, with a policy period effective from November 28, 2019, to November 28, 2020 (the "Policy Period"). The Policy covered direct physical loss or damage to Minor Ltd.'s commercial property located at 7876 IH 35 North, San Antonio, Texas 78218 (the "Property") for damage caused by wind, hail, and water, unless otherwise excluded.

Prior to issuance of the Policy, Minor Ltd. entered a long-term lease agreement with a tenant on October 7, 2006. A wind and hail storm occurred in the area of the Property on May

27, 2020. On February 9, 2021, Minor Ltd. notified State Auto of damage to the Property that it alleged was caused by this May 2020 storm. State Auto acknowledged receipt of this notice the same day. Also on the same day, State Auto received an email from Minor Ltd.'s independent adjuster, Blackstone Claim Services, Inc. ("Blackstone"). On February 9 and 10, 2021, State Auto initiated its investigation and communicated with Edward Camis, Blackstone's desk adjuster, to discuss Minor Ltd.'s insurance claim and to schedule an inspection of the Property. State Auto also retained Senior Engineer, Eric Moody, who, on April 15, 2021, performed his forensic engineering inspection of the Property with Matthew Tomarchio of State Auto. Moody investigated for hail or wind damage to the Property's metal, single-ply membrane and clay tile roofs, as well as for the source of any water damage to the interior wall, ceiling drywall, and floor coverings. Following his inspection, Moody completed a report, in which he noted the weather data confirmed the Property encountered hail the size of 3.25 inch diameter on April 12, 2016, and hail the size of 1.00 inch diameter on May 27, 2020. Moody concluded:

1. According to the available severe weather from the weather data noted above, the Property was located in an area that incurred significant hailstone impacts on May 12, 2016. In this well publicized storm, the Property likely received approximately 2.10 – 3.25 inch diameter hail. The noted distress in localized areas of the single-ply roofing membrane and clay tile roofing is consistent with this large hail.
2. Approximately 15-20 clay roofing tiles were cracked. There were also isolated clay tile that had been repaired and/or replaced on a prior occasion.
3. The metal R-panel roofing exhibited evidence of minor indentations due to hailstone impacts and are strictly cosmetic in nature as they will not affect the utility, structural capacity, or functionality of the metal panel roofing.
4. The metal caps on the parapet walls revealed a history of prior repairs. There was evidence of minor hailstone indentations on the metal caps.
5. There was no evidence of hail damage to the stucco walls but there was significant evidence of roofing cement repairs to the stucco at several areas.
6. The Property has been subjected to numerous smaller hailstorms wherein the hail size ranged from approximately 0.75 – 1.25 inches in diameter. This includes the more recent hailstorm that occurred on May 27, 2020. It is unlikely these smaller hailstorms, including the May 27, 2020 storm, caused or con-

tributed to the noted hail damage observed to the metal R-panel, single-ply membrane, or clay tile roof coverings.

On April 15, 2021, State Auto also sent Minor Ltd. and Camis of Blackstone, its "Proof Of Loss In Abeyance and Reservation of Rights Letter." This letter acknowledged receipt of Minor Ltd.'s Proof of Loss, stated its investigation was ongoing, and described its current understanding of the factual background while providing reasons and Policy provisions that may potentially limit coverage for some or all aspects of Minor Ltd.'s damage claim. On April 20, 2021, Blackstone sent a letter in response, disagreeing with the expressed potential coverage issues of Minor Ltd.'s damage claim. Blackstone also requested State Auto's coverage decision and its estimate.

On June 29, 2022, State Auto sent Minor Ltd. and Blackstone Moody's report, stating Minor Ltd.'s damage claim was not covered under the Policy, as Moody's report noted the prior hailstorm in May 2016 was the cause of the hail damage. As an additional basis for denial of coverage under the Policy, State Auto also concluded Minor Ltd. was not responsible for the subject roof repairs and maintenance, as the Lease Agreement placed this responsibility on Minor Ltd.'s tenant. Based upon its reading of the Lease Agreement, State Auto concluded the tenant's responsibility to maintain the roof relieved Minor Ltd. of responsibility to fix or maintain the roof. Consequently, even if the subject storm did cause the subject damage, it would not be covered under Minor Ltd.'s Policy because Minor Ltd. lacks an insurable interest in the Property for the alleged loss.

Minor Ltd. filed suit asserting causes of action for breach of contract, violations of Texas Insurance Code §541 and violation of the Prompt Payment of Claims Act under Texas Insurance Code § 542.055. Minor Ltd. seeks Declaratory Judgment stating the Policy provides coverage for

the cost to repair the damaged property, less the deductible. In the alternative, Minor Ltd. asserts the Policy is ambiguous and must be interpreted in favor of coverage and against State Auto. During litigation, State Auto retained an engineering expert, Darin Lasater, with Nelson Forensics, and a construction expert, Scott Lansing, with Riverstone Building & Consulting. Minor Ltd. also hired expert witnesses for litigation, Art Boutin and Moises Cruz.

## Legal Standard

Summary judgment is appropriate if the record shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Rodriguez v. Pacificare, Inc.*, 980 F.2d 1014, 1019 (5th Cir. 1993).[1] "A fact is material only if its resolution would affect the outcome of the action." *Wiley v. State Farm Fire & Cas. Co.*, 585 F.3d 206, 210 (5th Cir. 2009). A genuine dispute for trial exists if the record taken as a whole could lead a reasonable trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Bayle v. Allstate Ins. Co.*, 615 F.3d 350, 355 (5th Cir. 2010). Because there must be a genuine dispute of material fact, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

The moving party bears the initial burden of informing the court of the basis for the motion and of identifying those portions of the record which demonstrate the absence of a genuine dispute of material fact or the appropriateness of judgment as a matter of law." *Celotex Corp.*, 477 U.S. at 323; *Adams v. Travelers Indem. Co.*, 465 F.3d 156, 163 (5th Cir. 2006). The movant is not required to negate the elements of the nonmovant's case but may satisfy its summary

---

[1] Although 2010 amendments replaced "issue" with "dispute," the summary judgment standard "remains unchanged." Fed. R. Civ. P. 56 advisory committee notes (2010 amend.).

judgment burden by demonstrating the absence of facts supporting specific elements of the nonmovant's cause(s) of action. *Little v. Liquid Air Corp.*, 37 F. 3d 1069, 1075, 1076 n. 16 (5th Cir. 1994).

To satisfy this burden, the moving party must provide affidavits or identify any portion of the pleadings, discovery or admissions that demonstrate the absence of a triable dispute of material fact. *Celotex Corp.*, 477 U.S. at 323; *Rodriguez*, 980 F.2d at 1019. "If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014).

If the movant carries its initial burden, the burden shifts to the nonmovant to present competent summary judgment evidence showing the existence of a genuine dispute of material fact. *Matsushita*, 475 U.S. at 586-87; *see also* Fed. R. Civ. P. 56(c). Upon the shifting burden, "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Brown v. City of Houston, Tex.*, 337 F.3d 539, 541 (5th Cir. 2003); *see also Eason v. Thaler,* 73 F.3d 1322, 1325 (5th Cir. 1996). The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which this evidence raises a genuine dispute of material fact. *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)(citing *Forsyth v. Barr,* 19 F.3d 1527, 1537 (5th Cir. 1994)). Further, should the nonmoving party fail "to address or respond to a fact raised by the moving party and supported by evidence, the court may consider the fact as undisputed" and "[s]uch undisputed facts may form the basis for a summary judgment." *Broadcast Music*, *Inc. v. Bentley*, SA-16-CV-394, 2017 WL 782932, at *2 (W.D. Tex. Feb. 28, 2017).

In determining the merits of a motion for summary judgment, a court has no duty to search the record for material fact issues or to find a party's ill-cited evidence. *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012); *Ragas*, 136 F.3d at 458. In addition, a court may not make credibility determinations or weigh the evidence and must view all evidence and draw all reasonable inferences in the light most favorable to the party opposing the motion. *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150 (2000); *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005).

**Discussion**

Before conclusion of discovery, State Auto filed this Motion for Summary Judgment, in which it argues Minor Ltd. has no insurable interest in the Property's roof, and, even if it did, none of the alleged damages occurred within the Policy Period or are otherwise covered by the Policy. *ECF No. 24*. For these reasons, State Auto contends Minor Ltd. fails to show there is a genuine dispute as to any material fact as to its breach of contract cause of action, and State Auto is entitled to summary judgment as a matter of law. Because State Auto is entitled to summary judgment on the breach of contract cause of action as a matter of law, and because Minor Ltd. seeks no damages apart from the non-payment of his insurance claim, State Auto contends it is also entitled to judgment on the extra-contractual causes of action as a matter of law. Alternatively, because the evidence shows, at most, a bona fide dispute over coverage, State Auto contends it is entitled to judgment as a matter of law on all extra-contractual causes of action. *Id.*

**1. Breach of Contract Cause of Action**

**a. Whether Lack of Insurable Interest is a Waivable Affirmative Defense**

State Auto first argues Minor Ltd. lacked an insurable interest in the Property at the time of the alleged loss because the Lease Agreement between Minor Ltd. and its tenant place legal

responsibility for repair and maintenance on the tenant. Minor Ltd. raises three arguments in response: (1) State Auto waived the affirmative defense of lack of insurable interest because it did not assert the defense in its Answer; (2) State Auto is equitably estopped from asserting this affirmative defense; and (3) alternatively, the affirmative defense fails on the merits because Minor Ltd. does have an insurable interest in the property.

This case arises under this Court's diversity-of-citizenship jurisdiction, and therefore, Texas law must control on the issue of what constitutes an affirmative defense. *LSREF2 Baron, L.L.C. v. Tauch*, 751 F.3d 394, 398 (5th Cir. 2014); *Ferrera Land Mgmt. Mississippi, LLC v. Landmark American Ins. Co., et al.,* No. 1:19-CV-956, 2021 WL 5053526, at *3 (S.D. Miss. July 7, 2021). However, because the case proceeds in federal court, "the Federal Rules of Civil Procedure provide the manner and time in which defenses are raised and when waiver occurs." *Arismendez v. Nightingale Home Health Care, Inc.*, 493 F.3d 602, 610 (5th Cir. 2007); *Ferrera Land Mgmt.,* 2021 WL 5053526, at *3. A responding party must "affirmatively state any avoidance or affirmative defense" in its responsive pleading. Fed. R. Civ. P. 8(c). Generally, if a particular affirmative defense is not properly asserted, it is waived. *Lucas v. United States*, 807 F.2d 414, 417 (5th Cir. 1986). However, this provision is not absolute because the purpose of Federal Rule 8(c) is simply to provide plaintiffs fair notice and prevent undue surprise. *Motion Med. Techs., L.L.C. v. Thermotek, Inc.*, 875 F.3d 765, 771 (5th Cir. 2017)(quoting *Rogers v. McDorman*, 521 F.3d 381, 385 (5th Cir. 2008)). Consequently, if a responding party raises an affirmative defense "in a manner that does not result in unfair surprise, then a 'technical failure to comply precisely with Rule 8(c) is not fatal.'" *Motion Med. Techs.,* 875 F.3d at 771 (quoting *Lucas*, 807 F.2d at 417). Therefore, a defendant can avoid waiver of an affirmative defense if

7

"(1) the defendant raised the affirmative defense 'at a pragmatically sufficient time,' and (2) the plaintiff 'was not prejudiced in its ability to respond.'" *Id.* (quoting *Lucas*, 807 F.2d at 417-18).

Under similar facts to these in *Motion Medical*, the Fifth Circuit found the defendant did not waive an affirmative defense because the defendant raised it at a pragmatically sufficient time in its Motion for Summary Judgment and the plaintiff received fair notice and suffered no prejudice in its ability to respond. *Motion Med. Techs.,* 875 F.3d at 771-772. The *Motion Medical* Court noted it has "repeatedly rejected waiver arguments when a defendant raised an affirmative defense for the first time at summary judgment—or even later." *Id.* at 772 (collecting cases).

Following the Court's guidance in *Motion Medical*, this Court concludes that while the lack of insurable interest is an affirmative defense under Texas law, State Auto raised it at a pragmatically sufficient time at mediation and in its Motion for Summary Judgment, and Minor Ltd. received fair notice and suffered no prejudice in its ability to respond. *See Motion Med. Techs.,* 875 F.3d at 771-72. For the same reason, Minor Ltd.'s argument that State Auto is equitably estopped from asserting this affirmative defense also fails. *See id.*

### b.  Whether Minor Ltd. Lacks an Insurable Interest in the Property

State Auto contends Minor Ltd.'s breach of contract cause of action fails as a matter of law because Minor Ltd. does not hold an insurable interest in the Property. To make this argument, State Auto looks to the Lease Agreement between Minor Ltd. and its' tenant and focuses on one extrapolated passage which undisputedly states: "Tenant is responsible for all other maintenance and repair activities" and "the determination of the necessity and of the repair and maintenance shall be subject to the Tenant's sole discretion…." State Auto contends that under this passage, in the Lease Agreement, Minor Ltd. "relinquished all obligations and liability to

maintaining [sic] the roof and its tenant is required to indemnify it for any loss to the roof. Consequently, [Minor Ltd.] cannot show a pecuniary loss as it relates to damage to the Property's roof. Because the roof of the Property is the only damage [Minor Ltd.] seeks to recover, as a matter of law, State Auto is entitled to summary judgment" on all causes of action.

The breach of contract cause of action asserted by Minor Ltd. pertains to the insurance policy contract between State Auto and Minor Ltd. Thus, in making this argument, State Auto requests this Court interpret the meaning of an extrapolated passage from the Lease Agreement contract between Minor Ltd. and its non-party tenant to determine the veracity of the breach of contract cause of action. State Auto contends that should the Court agree with its own interpretation of the Lease Agreement between Minor Ltd. and its non-party tenant, the breach of contract cause of action must fail as a matter of law.[2] Minor Ltd. contends that should the Court agree with its interpretation of the Lease Agreement with its non-party tenant or find the extrapolated passage ambiguous, State Auto's argument for summary judgment fails.

To determine the viability of State Auto's argument for summary judgment on the breach of contract cause of action, the parties request this Court interpret language from a contract Minor Ltd. holds with a non-party tenant. Prior to determining whether Minor Ltd. holds an insurable interest in the Property based upon interpretation of the Lease Agreement, the Court must first determine whether the absent tenant is a necessary party to this action.

Federal Rule 19, although not normally applied in the context of a single argument for summary judgment, provides guidance on this issue. Federal Rule 19 requires joinder of a party

> subject to service of process whose joinder will not deprive the court of subject matter jurisdiction if: . . . (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence

---

[2] State Auto does not contest that Minor Ltd. owned the Property at all times relevant to this dispute and still owns the Property. Further, State Auto does not dispute this Lease Agreement with this language existed at the time it issued the Policy to Minor Ltd.

> may; (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1)(B). In utilizing Federal Rule 19 as guidance in this summary judgment context, the Court considers the purpose of Federal Rule 19 is to "bring all persons that may have an interest in the subject of an action together in one forum so that the lawsuit may be fairly and completely disposed of." *Pulitzer–Polster v. Pulitzer,* 784 F.2d 1305, 1308 (5th Cir. 1986); *LST Fin., Inc. v. Four Oaks Fincorp, Inc.*, No. SA-14-CV-435, 2014 WL 3672982, at *2 (W.D. Tex. July 24, 2014). Under Federal Rule 19, a necessary party is one whose absence would "leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations," particularly because a "[d]efendant has the right to be safe from needless multiple litigation and incurring avoidable inconsistent obligations." *Schutten v. Shell Oil Co.,* 421 F.2d 869, 873 (5th Cir. 1970)(quoting Fed. R. Civ. P. 19(a)(1)(B)(ii)). Further, a necessary party is one who has an interest in the litigation and whose absence could impair its own ability to protect its interests. Fed.R.Civ.P. 19(a)(1)(B)(i).

"A party to an agreement in dispute is an indispensable party ... in a suit seeking to rescind, annul, or interpret that agreement." *Altava Health Mktg., Ltd. v. Shortgrass, Inc.,* No. CIV.A. H-04-873, 2005 WL 2277598, at *9 (S.D. Tex. Sept. 15, 2005). Likewise, in a suit seeking to interpret a disputed contract, a party to the contract is an indispensable party if that party's rights would be impacted by the outcome of the suit. *LST Fin., Inc.*, 2014 WL 3672982, at *2. "If a judgment would preclude an absent party from enforcing [its] rights or injuriously affect them, that party is indispensable." *HS Resources, Inc. v. Wingate,* 327 F.3d 432, 439 (5th Cir. 2003). "Unless a party is actively or constructively before it, a court cannot adjudicate upon an absent party's rights." *Calcote v. Texas Pac. Coal & Oil Co.,* 157 F.2d 216, 220 (5th Cir. 1946);

*J.P Morgan Chase Bank, N.A. v. Sharon Peters Real Estate, Inc.,* No. 5:12-CV-1172, 2013 WL 3754621, at *2 (W.D. Tex. July 15, 2013).

Because the parties request this Court interpret language from a contract Minor Ltd. holds with a non-party tenant, any interpretation of the Lease Agreement contract will inevitably impact the tenant's rights and obligations under the Lease Agreement. Accordingly, if the Court interprets the Lease Agreement in State Auto's favor at this summary judgment stage, the interpretation will leave Minor Ltd. subject to inconsistent obligations or vulnerable to suit from the tenant. In addition, the non-party tenant could become responsible for obligations and expenses it may not have anticipated or negotiated. Should the Court find the contract ambiguous as reasonably subject to both proposed interpretations, the non-party's rights would be impacted similarly by this determination. See LST.  Consequently, any denial or grant of summary judgment based upon this particular argument could subject Minor Ltd. and its tenant to inconsistent obligations or potential litigation and impacts the non-party tenant's rights and obligations under the Lease Agreement. *See LST Fin., Inc.*, 2014 WL 3672982, at *2–4.

For these reasons, State Auto's request for summary judgment on the breach of contract cause of action based upon the argument that Minor Ltd. holds no insurable interest in the Property because its tenant carries the responsibility for "repairs and maintenance" under the Lease Agreement between Minor Ltd. and the tenant, must fail. *See id.* The Scheduling Order deadline to amend pleadings or join parties is long passed and will not be extended. Summary judgment on this basis will be denied.

### c.  Apportionment of Damage

State Auto contends it is entitled to summary judgment on the breach of contract cause of action because Minor Ltd. cannot establish "any covered damage occurred within the Policy Pe-

riod, November 28, 2019, to November 28, 2020." Specifically, State Auto argues Minor Ltd.'s claim for damages resulting from breach of contract fails because some portion of the alleged damages occurred outside the Policy Period and is, therefore, a non-covered loss, and Minor Ltd. cannot allocate its damages between what occurred outside the Policy Period and what occurred on May 27, 2020, inside the Policy Period. Because Minor Ltd. cannot conclusively apportion any damage between that caused by the 2016 storm and that caused by the May 2020 storm, and because Minor Ltd. has no evidence to establish the alleged damage was caused by the May 2020 storm, State Auto contends it is entitled to summary judgment on the breach of contract cause of action.

State Auto relies upon the concurrent causation doctrine to form the basis of this argument for summary judgment. *ECF No. 24, pp. 12-14*. Under the concurrent causation doctrine, "when covered and non-covered perils combine to create a loss, the insured is entitled to recover that portion of the damage caused solely by the covered peril. The burden of segregating the damage attributable solely to the covered event is a coverage issue for which the insured carries the burden of proof. Failure to segregate covered and noncovered perils is fatal to recovery." *Advanced Indicator and Manufacturing, Inc. v. Acadia Ins. Co.*, 50 F.4th 469, 476-77 (5th Cir. 2022); *see also Lyons v. Miller Cas. Ins. Co. of Tex.*, 866 S.W.2d 597, 601 (Tex. 1993). Segregation of damages is generally an issue of fact for the jury. An insured may meet its burden of proof by presenting evidence demonstrating the alleged loss came entirely from a covered cause or evidence by which a jury may reasonably segregate covered and non-covered losses. *Advanced Indicator and Manufacturing, Inc.*, 50 F.4th at 476-77; *Travelers Indem. Co. v. McKillip*, 469 S.W.2d 160, 162 (Tex. 1971).

In the context of summary judgment, to satisfy its burden under the concurrent causation doctrine, an insured must present evidence which raises a genuine dispute of material fact whether the alleged loss is a covered loss or present evidence from which a jury may "reasonably segregate covered and non-covered losses." *See Advanced Indicator and Manufacturing, Inc.*, 50 F.4th at 476-77. As in *Advanced Indicator and Manufacturing, Inc. v. Acadia Ins. Co.*, the question before this Court is whether Minor Ltd. presents sufficient summary judgment evidence to create a disputed issue of material fact whether the damage to the Property was caused solely by the May 2020 hailstorm, which occurred during the subject Policy Period, or from which a jury may "reasonably segregate covered and non-covered losses."

To defend against summary judgment on this basis, Minor Ltd. presents summary judgment evidence consisting of a declaration from one of its retained expert witnesses, Art Boudin. *ECF No. 26, Exh. C*. In his summary-judgment declaration, Boudin stated he inspected the Property on two occasions. Following these inspections, he "prepared a Cost of Repair Estimate for damage caused solely by the May 27, 2020, hail storm to all roofs and the interior." Additionally, Boudin declared:

> [i]n addition to damage caused by the 2020 hailstorm, [he] observed minor damage to the roofs from other sources typical of commercial buildings including wear and tear, mechanical damage, and damage from footfall. None of this minor damage necessitates replacement of the roofs. . . . In this case, I noted non-hail related damage and some hail damage that pre-dated the 2020 hailstorm, and I disregarded such damages for purposes of determining whether and to what extent hail damaged the building in May 2020.

> After completing my investigation, I reviewed the following: Moody Engineering Report, and the photos taken and estimate prepared by Blackstone Claim Service, Plaintiff's public adjuster in relation to the insurance claim. This additional information corroborated my original opinion that the May 27, 2020, storm caused damage to the roofs of the building warranting repair and/or full replacement of the roofing systems, irrespective of any other source of damage.

> After completing my investigation, I compiled a narrative report that provides the reasonable and necessary estimated costs of repair on a line-item basis using a price list from May 2020. . . . The Cost of Repair estimate and completion proposal for the scope of work proposed is $559,772.45. . . . The scope of repairs utilized in preparing my Cost of Repair Estimate reflects an accurate, reasonable and necessary scope of repairs, and pricing for the same, to repair the hail and wind damage to the property, that was caused solely by the May 2020 hailstorm.

*ECF No. 26, Exh. C,* pp. 1-3.

Boudin's declaration, alone, presents evidence from which a reasonable jury could conclude the May 2020 storm caused significant damage that required property repair and/or replacement of the roofs irrespective of any damage caused by a previous storm. In addition, Minor Ltd. also presents a summary-judgment declaration from Civil Engineer, Moises Cruz. *ECF No. 26, Exh. D.* In his summary-judgment declaration, Cruz states he inspected the Property on two occasions. Following these inspections, he determined

> in addition to damage caused by the 2020 hailstorm, I observed minor damage to the roofs from other sources typical of commercial buildings including wear and tear and mechanical damage. None of this minor damage necessitates replacement of the roofs. . . In this case, I noted non-hail related damage and some hail damage that pre-dated the 2020 hailstorm, and I disregarded such damages for purposes of determining whether and to what extent hail damaged the building in May 2020.

*ECF No. 26, Exh. D, pp. 1-3.* Further, Cruz concluded, "[a]fter completing my investigation, I determined, within a reasonable degree of engineering certainty, that the TPO roof of the property needed to be replaced solely due to the 2020 hail event and irrespective of any other condition or damage," and "the May 27, 2020, storm caused damage to the TPO roof warranting full replacement, irrespective of any other source of damage." *Id.*

Viewing this evidence in the light most favorable to Minor Ltd., a reasonable jury could find the May 2020 storm caused damage to the Property and a reasonable jury could apportion any damage caused by this storm if it determined some damage occurred outside the Policy Period. While State Auto does offer evidence to the contrary, this evidence serves only to create a

14

factual dispute for a jury and does not necessitate summary judgment in its favor. *See Advanced Indicator & Mfg., Inc.*, 50 F.4th at 476–77.[3]

### d.  Minor Ltd. Entitled to Damages for Only 2020 Storm

Finally, State Auto contends it "denies any of the Property's roof requires repair due to hail on May 27, 2020 and rejects [Minor Ltd.'s] reasoning; however, if it is found repair is necessary, Plaintiff is not entitled to payment for undamaged roofing materials. Nothing in the Policy or at law requires State Auto to pay for property that has not been subjected to a physical loss." *ECF No. 24, pp. 17-18.*

State Auto's basis for summary judgment on the breach of contract cause of action is unclear from this argument. However, based upon the foregoing discussion, viewing the summary judgment evidence in the light most favorable to Minor Ltd., a reasonable jury could find the May 2020 storm caused damage to the Property and a reasonable jury could apportion any damage caused by this storm if it determined some damage occurred outside the Policy Period.

Consequently, summary judgment based upon this argument will be denied.

### 2.  Extracontractual Causes of Action

State Auto contends it is entitled to summary judgment on all extracontractual causes of action because it is entitled to summary judgment as a matter of law on the breach of contract claim, or because there is a bona fide dispute over coverage. State Auto contends Minor Ltd.'s "entire case is erroneously premised on State Auto's alleged failure to pay policy benefits. Because State Auto is entitled to judgment as a matter of law on the breach of contract claim, State Auto is entitled to summary judgment on the extra-contractual claims as well." Alternatively,

---

[3] The Court will not address the parties' objections to the opposing party's summary judgment evidence. The Court relied solely upon un-objected to declarations to make its determination on this issue.

State Auto contends Minor Ltd. fails to present evidence this action is nothing more than a bona fide disagreement over coverage. *ECF No. 24, pp. 18-20.*

This argument fails because the Court has already determined genuine disputes of material fact preclude summary judgment on the breach of contract cause of action. Further, because, as State Auto admits, this action "is a bona fide disagreement over coverage," this Court must deny summary judgment on the asserted extra-contractual causes of action unless State Auto presents evidence it is entitled to summary judgment as a matter of law. State Auto did not satisfy this burden. Consequently, this Court must deny summary judgment on the extra-contractual causes of action based upon these arguments.

## Conclusion

For the reasons discussed, State Auto's Motion for Summary Judgement is DENIED.

It is so ORDERED.
SIGNED this 20th day of January, 2023.


JASON  PULLIAM
UNITED STATES DISTRICT JUDGE